**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **WILBERT HACKLEY,** | : | **Civil No. 3:16-CV-171** |
| | : | |
| **Plaintiff,** | : | |
| | : | **(Judge Caputo)** |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **DAVID EBBERT, et al.,** | : | |
| | : | |
| **Defendants.** | : | |

## REPORT AND RECOMMENDATION

### I.   Statement of Facts and of the Case

The plaintiff, Wilbert Hackley, is a District of Columbia prisoner who was housed at the United States Penitentiary, Canaan in 2013 and 2014. As a prisoner serving a sentence for offenses under the Criminal Code of the District of Columbia Hackley was eligible for parole consideration in accordance with the D.C. Code, and received periodic parole hearings.

Hackley is also an inmate whose correctional history is marked by murderous institutional violence. While incarcerated Hackley has indulged in episodes of new criminal conduct. (Doc. 17-1.) This institutional misconduct has included weapons offenses and simple assaults as well as an incident in which Hackley "instigated a

1

deadly assault on a Federal Correctional Officer that was attempting to quell a violent confrontation between two rival groups." (Id.)  In the course of this fatal escapade Hackley "initiated the assault on this officer by striking him to the ground with a paddle. [Hackley then] continued to assault this officer by striking him to the ground with a paddle [and] continued to assault this Officer with the same paddle as he lay on the ground.  [Hackley was] joined in the assault by four other individuals including one who stabbed the officer repeatedly." (Id.)

Hackley has now brought a civil lawsuit against two correctional counselors, Case Manager Coordinator Cynthia Hugar and Case Manager Joseph Mushala, alleging that these prison officials retaliated against Hackley, denied him due process and interfered with his right to petition the courts. (Docs. 1 and 10.)  With respect to these claims, the well-pleaded and essentially undisputed facts are as follows:

In July of 2013, Hackley received a parole review hearing from the United State Parole Commission.  Following that hearing Hackley was denied parole and his case was continued for future consideration.  In its August 27, 2013, decision denying Hackley parole the Parole Commission cited his history of prison violence as one factor which mitigated heavily against his early release from custody.  In particular, the Commission noted Hackley's past institutional misconduct which entailed both weapons offenses and simple assaults.  The Commission also focused on a

particularly brutal element of Hackley's criminal past in its decision denying him parole: Hackley's involvement in the death of a correctional officer. According to the Commission's August 27, 2013, decision while in prison Hackley "instigated a deadly assault on a Federal Correctional Officer that was attempting to quell a violent confrontation between two rival groups." (Doc. 17-1.) In the course of this fatal escapade Hackley "initiated the assault on this officer by striking him to the ground with a paddle. [Hackley then] continued to assault this officer by striking him to the ground with a paddle [and] continued to assault this Officer with the same paddle as he lay on the ground. [Hackley was] joined in the assault by four other individuals including one who stabbed the officer repeatedly." (Id.) Characterizing Hackley's leading role in this murderous assault as "especially aggravating" the Commission "f[ound] that [Hackley's] release on parole would depreciated the seriousness of the offense and promote disrespect for the law." (Id.) Accordingly, the Commission denied Hackley early favorable release on parole. (Id.)

The Commission issued this decision on August 27, 2013, and there is some indication that a copy of the decision was then faxed to the United States Penitentiary, Canaan, but Hackley insists that he did not timely receive this adverse parole decision notice in August of 2013. Notably, while Hackley claims not to have received this notice when it was first sent he provides nothing beyond his own speculation,

conjecture and surmise to link either of the named defendants, Case Manager Coordinator Cynthia Hugar and Case Manager Joseph Mushala, to this delayed notification. Instead, the well-pleaded and undisputed facts in this case reveal that these two correctional counselors took affirmative steps to provide Hackley with a belated notice of this parole action, and to cure any possible potential prejudice which might have flowed from Hackley's delay in receiving this notice.

Specifically, when Hackley inquired about this matter in February of 2014, Case Manager Coordinator Hugar promptly contacted the Parole Commission. Learning of the Commission's August 27, 2013 action in Hackley's case Hugar immediately obtained a copy of that decision and directed Mushala to deliver the decision to Hackley. The defendants also provided Hackley with a sworn declaration verifying that Hackley first received this notice of Parole action on February 20, 2014. (Doc. 10, p.5.) By providing this sworn statement to Hackley prison officials were ensuring that Hackley could still appeal this adverse parole action, since the Parole Commission has confirmed that this verified delay in receiving notice would provide Hackley with good cause for filing a tardy appeal. (Doc. 17-1, Declaration of Helen Krapels.)

Although these prison officials who Hackley has elected to sue took these affirmative steps to restore Hackley's parole appeal rights, it is also entirely

undisputed that Hackley never filed an appeal of this parole decision.  Instead, after

waiting some 23 months Hackley filed this lawsuit, which names the correctional

counselors who aided him in restoring his parole appeal rights as defendants, and then

accuses these correctional counselors of retaliating against Hackley, denying him due

process and interfering with his right to petition the courts.  (Doc. 10.)

The defendants have responded to this accusation by filing a motion to dismiss,

or in the alternative for summary judgment.  (Doc. 16.)  This motion is fully briefed

by the parties, (Docs. 17, 18, 19, 20, 21, an 24.), and is, therefore, ripe for resolution.

For the reasons set forth below, it is recommended that this motion be granted, and

Hackley's complaint be dismissed.

## II.   Discussion

### A.   Standard of Review-Motion to Dismiss, or in the Alternative, Summary Judgment

The defendants have framed this motion as one seeking dismissal under Rule

12(b)(6) of the Federal Rules of Civil Procedure or, in the alternative, for summary

judgment pursuant to Rule 56.  When a party moves to dismiss, but where "matters

outside the pleadings are presented to and not excluded by the court, the motions shall

be treated as one for summary judgment and disposed of as provided in Rule 56."

Fed. R. Civ. P. 12(d).  Typically, when a court converts a motion to dismiss into a motion for summary judgment under Rule 56, notice must be given to all parties of the court's intent to do so.  Id.; Garcia v. Newtown Twp., No. 09-CV-3809, 2010 U.S. Dist. LEXIS 20380, 2010 WL 785808, at *3 (E.D. Pa. March 5, 2010).  However, if a motion to dismiss has been filed with an alternative request for summary judgment, the Court of Appeals of the Third Circuit has found that the alternative filing is sufficient to "place the parties on notice that summary judgment might be entered." Latham v. United States, 306 F. App'x 716, 718 (3d Cir. 2009) (citing Hilfirty v. Shipman, 91 F.3d 573, 578-79 (3d Cir. 1996)).

At the outset, to the extent that this motion makes a facial attack upon the sufficiency of the complaint, we will treat the motion as a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, which provides that a complaint should be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  With respect to this benchmark standard for legal sufficiency of a complaint, the United States Court of Appeals for the Third Circuit has aptly noted the evolving standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in recent years.  Beginning with the Supreme Court's opinion in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) continuing with our

opinion in Phillips [v. County of Allegheny, 515 F.3d 224, 230 (3d Cir. 2008)] and culminating recently with the Supreme Court's decision in Ashcroft v. Iqbal –U.S.–, 129 S.Ct. 1937 (2009) pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

Fowler v. UPMC Shadyside, 578 F.3d 203, 209-10 (3d Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief may be granted, the court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. Jordan v. Fox Rothschild, O'Brien & Frankel, Inc., 20 F.3d 1250, 1261 (3d Cir. 1994). However, a court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). Additionally a court need not "assume that a ... plaintiff can prove facts that the ... plaintiff has not alleged." Associated Gen. Contractors of Cal. v. California State Council of Carpenters, 459 U.S. 519, 526 (1983). As the Supreme Court held in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), in order to state a valid cause of action a plaintiff must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of

actions will not do." Id. at 555.  "Factual allegations must be enough to raise a right to relief above the speculative level." Id.

In keeping with the principles of Twombly, the Supreme Court has underscored that a trial court must assess whether a complaint states facts upon which relief can be granted when ruling on a motion to dismiss.  In Ashcroft v. Iqbal, 556 U.S. 662 (2009), the Supreme Court held that, when considering a motion to dismiss, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 679. According to the Supreme Court, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678.  Rather, in conducting a review of the adequacy of complaint, the Supreme Court has advised trial courts that they must:

> [B]egin by identifying pleadings that because they are no more than conclusions are not entitled to the assumption of truth.  While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.  When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Id. at 679.

Thus, following Twombly and Iqbal a well-pleaded complaint must contain more than mere legal labels and conclusions.  Rather, a complaint must recite factual allegations

sufficient to raise the plaintiff's claimed right to relief beyond the level of mere

speculation.  As the United States Court of Appeals for the Third Circuit has stated:

> [A]fter Iqbal, when presented with a motion to dismiss for failure to
> state a claim, district courts should conduct a two-part analysis.  First,
> the factual and legal elements of a claim should be separated.  The
> district court must accept all of the complaint's well-pleaded facts as
> true, but may disregard any legal conclusions.  Second, a district court
> must then determine whether the facts alleged in the complaint are
> sufficient to show that the plaintiff has a 'plausible claim for relief.'  In
> other words, a complaint must do more than allege the plaintiff's
> entitlement to relief.  A complaint has to 'show' such an entitlement
> with its facts.

Fowler, 578 F.3d at 210-11.

In practice, consideration of the legal sufficiency of a complaint entails a three-

step analysis: "First, the court must 'tak[e] note of the elements a plaintiff must plead

to state a claim.'  Iqbal, 129 S.Ct. at 1947.  Second, the court should identify

allegations that, 'because they are no more than conclusions, are not entitled to the

assumption of truth.'  Id. at 1950.  Finally, 'where there are well-pleaded factual

allegations, a court should assume their veracity and then determine whether they

plausibly give rise to an entitlement for relief.'  Id."  Santiago v. Warminster Tp., 629

F.3d 121, 130 (3d Cir. 2010).

In other instances, the defendants invite us to consider matters outside the

pleadings when ruling upon this motion.  To the extent that we are asked to consider

uncontested facts beyond the pleadings we will treat this motion as a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure which provides that the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P., Rule 56. Through summary adjudication a court is empowered to dispose of those claims that do not present a "genuine dispute as to any material fact," Fed. R. Civ. P. 56(a), and for which a trial would be "an empty and unnecessary formality." Univac Dental Co. v. Dentsply Int'l, Inc., No. 07-0493, 2010 U.S. Dist. LEXIS 31615, at *4 (M.D. Pa. Mar. 31, 2010). The substantive law identifies which facts are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine only if there is a sufficient evidentiary basis that would allow a reasonable fact finder to return a verdict for the non-moving party. Id. at 248-49.

The moving party has the initial burden of identifying evidence that it believes shows an absence of a genuine issue of material fact. Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 145-46 (3d Cir. 2004). Once the moving party has shown that there is an absence of evidence to support the nonmoving party's claims, "the

non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." Berckeley Inv. Group. Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006); accord Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is appropriate. Celotex, 477 U.S. at 322. Summary judgment is also appropriate if the non-moving party provides merely colorable, conclusory, or speculative evidence. Anderson, 477 U.S. at 249. There must be more than a scintilla of evidence supporting the nonmoving party and more than some metaphysical doubt as to the material facts. Id. at 252; see also, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In making this determination, the court must "consider all evidence in the light most favorable to the party opposing the motion." A.W. v. Jersey City Pub. Schs., 486 F.3d 791, 794 (3d Cir. 2007).

Moreover, a party who seeks to resist a summary judgment motion by citing to disputed material issues of fact must show by competent evidence that such factual disputes exist. Further, "only evidence which is admissible at trial may be considered in ruling on a motion for summary judgment." Countryside Oil Co., Inc. v. Travelers Ins. Co., 928 F.Supp. 474, 482 (D.N.J.1995). Therefore, where a party simply

11

presents inadmissible hearsay declarations in an attempt to establish a disputed material issue of fact, courts have typically rebuffed these efforts and held instead that summary judgment is appropriate.  See, e.g., Synthes v. Globus Medical, Inc., No. 04-1235, 2007 WL 2043184 (E.D.Pa. July 12, 2007); Bouriez v. Carnegie Mellon Univ., No. 02-2104, 2005 WL 2106582,* 9 (W.D.Pa. Aug. 26, 2005); Carpet Group Int'l v. Oriental Rug Importers Assoc., Inc., 256 F.Supp.2d 249 (D.N.J. 2003).

Similarly, it is well-settled that:  "[o]ne cannot create an issue of fact merely by . . . denying averments . . . without producing any supporting evidence of the denials." Thimons v. PNC Bank, NA, 254 F.App'x 896, 899 (3d Cir. 2007)(citation omitted).  Thus, "[w]hen a motion for summary judgment is made and supported . . ., an adverse party may not rest upon mere allegations or denial." Fireman's Ins. Co. Of Newark NJ v. DuFresne, 676 F.2d 965, 968 (3d Cir. 1982), see Sunshine Books, Ltd. v. Temple University, 697 F.2d 90, 96 (3d Cir. 1982)."  [A] mere denial is insufficient to raise a disputed issue of fact, and an unsubstantiated doubt as to the veracity of the opposing affidavit is also not sufficient." Lockhart v. Hoenstine, 411 F.2d 455, 458 (3d Cir. 1969).  Furthermore, "a party resisting a [Rule 56] motion cannot expect to rely merely upon bare assertions, conclusory allegations or suspicions." Gans v. Mundy, 762 F.2d 338, 341 (3d Cir. 1985)(citing Ness v. Marshall, 660 F.2d 517, 519 (3d Cir. 1981)).

Finally, a party who seeks to resist a summary judgment motion must also comply with Local Rule 56.1, which specifically directs a party opposing a motion for summary judgment to submit a "statement of the material facts, responding to the numbered paragraphs set forth in the statement required [to be filed by the movant], as to which it is contended that there exists a genuine issue to be tried"; if the nonmovant fails to do so, "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed to be admitted." L.R. 56.1. Under the Local Rules, the failure to follow these instructions and appropriately challenge the material facts tendered by the defendant means that those facts must be deemed, since:

> A failure to file a counter-statement equates to an admission of all the facts set forth in the movant's statement. This Local Rule serves several purposes. First, it is designed to aid the court in its determination of whether any genuine issue of material fact is in dispute. Second, it affixes the burden imposed by Federal Rule of Civil Procedure 56(e), as recognized in <u>Celotex Corp. v. Catrett</u>, on the nonmoving party 'to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, *designated specific facts showing that there is a genuine issue for trial*.' 477 U.S. 317, 324 (1986) (internal quotations omitted) (emphasis added).

<u>Doe v. Winter</u>, No. 04-CV-2170, 2007 U.S. Dist. LEXIS 25517, *2 n.2 (M.D. Pa. Apr. 5, 2007) (parallel citations omitted; court's emphasis). A party cannot evade these litigation responsibilities in this regard simply by citing the fact that he is a *pro*

*se* litigant.  These rules apply with equal force to all parties.  See Sanders v. Beard, No. 09-CV-1384, 2010 U.S. Dist. LEXIS, *15 (M.D. Pa. July 20, 2010) (*pro se* parties "are not excused from complying with court orders and the local rules of court"); Thomas v. Norris, No. 02-CV-01854, 2006 U.S. Dist. LEXIS 64347, *11 (M.D. Pa. Sept. 8, 2006) (*pro se* parties must follow the Federal Rules of Civil Procedure).

Judged against these legal guideposts, for the reasons set forth below, we find that Hackley's claims fail as a matter of law.

### B.   **Hackley's Retaliation, Access-to-Courts and Due Process Claims Fail as a Matter of Law**

In this case, Wilbert Hackley advances retaliation, access-to-courts, and due process violation claims against two correctional counselors, but those claims rest upon speculative, implausible, and legally insufficient assertions.  Thus, the gravamen of Hackley's lawsuit is that the delay in providing him notice of an adverse Parole Commission decision constituted a fundamental constitutional violation, but Hackley provides no evidence beyond his own conjecture to link any of the named defendants to this alleged constitutional infraction.

Instead, Hackley elects to sue the officials who actually assisted him, and cured any potential prejudice he might have experienced due to the delayed notification of

14

this parole action.  Thus, Hackley sues the very staff who listened to his complaints about not receiving notice of the parole action; followed up on those concerns; promptly obtained the Parole Commission decision and provided it to Hackley; and then took the affirmative step of giving Hackley a sworn declaration verifying that Hackley first received this notice of Parole action on February 20l, 2014.  (Doc. 10, p.5.)  By providing this sworn statement to Hackley prison officials ensured that Hackley could still appeal this adverse parole action, since this verified delay in receiving notice provided Hackley with good cause for filing a tardy appeal.  (Doc. 17-1, Declaration of Helen Krapels.)

Further, Hackley sues these officials for interfering with his right to appeal to parole decision even though it seems completely undisputed that, once the defendants paved the path for Hackley to file his appeal, he chose not to pursue that appeal. Therefore, reduced to its essence, Hackley's complaint sues the prison officials who took steps to restore his parole appeal rights, claiming that these officials interfered with his ability to pursue this appeal, even though Hackley never sought to appeal this decision once the defendants arranged to restore his appellate rights.

On these facts, Hackley simply has not stated a colorable constitutional claim. At the outset, this complaint fails as a First Amendment access to courts claim.  While the United States Supreme Court has long recognized that inmates have a

15

constitutional right of access to the courts, <u>Bounds v. Smith</u>, 430 U.S. 817 (1977), this right of access to the courts is satisfied when corrections officials facilitate "meaningful" access for those incarcerated, either through legal materials or the assistance of those trained in the law.  <u>Id</u>. at 827  ("[T]he fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law.")  The Supreme Court has provided further definition and guidance regarding the scope and nature of this right of access to the courts in <u>Lewis v. Carey</u>, 518 U.S. 343 (1996).  In <u>Lewis</u>, the court eschewed efforts to define this right in abstract, or theoretical terms, but rather cautioned courts to focus on concrete outcomes when assessing such claims.  As the court observed:

> Because <u>Bounds</u> did not create an abstract, freestanding right to a law library or legal assistance, an inmate cannot establish relevant actual injury simply by establishing that his prison's . . .  legal assistance program is subpar in some theoretical sense. . . .  Insofar as the right vindicated by <u>Bounds</u> is concerned, "meaningful access to the courts is the touchstone," <u>id.</u>, at 823, 97 S.Ct., at 1495 (internal quotation marks omitted), and the inmate therefore must go one step further and demonstrate that the alleged shortcomings in the  . . . legal assistance program hindered his efforts to pursue a legal claim. . . . .  Although <u>Bounds</u> itself made no mention of an actual-injury requirement, it can hardly be thought to have eliminated that constitutional prerequisite. And actual injury is apparent on the face of almost all the opinions in the 35-year line of access-to-courts cases on which <u>Bounds</u> relied, <u>see id.</u>,

> at 821-825, 97 S.Ct., at 1494-1497.  Moreover, the assumption of an
> actual-injury requirement seems to us implicit in the opinion's statement
> that "we encourage local experimentation" in various methods of
> assuring access to the courts.  Id., at 832, 97 S.Ct., at 1500.

Lewis v. Casey, 518 U.S. 343, 351-52 (1996).

Following Lewis, courts have consistently recognized that such claims require some proof of an actual, concrete injury, in the form of direct prejudice to the plaintiff in the pursuit of some other legal claim.  See, e.g., Oliver v. Fauver, 118 F.3d 175 (3d Cir. 1997); Demeter v. Buskirk, No. 03-1005, 2003 WL 22139780 (E.D. Pa. Aug. 27, 2003); Castro v. Chesney, No. 97-4983, 1998 WL 150961 (E.D. Pa. March 31, 1998). A necessary corollary to this principle is that, in order to prevail on an access to the courts claim, a "plaintiff must identify a 'nonfrivolous,' 'arguable' underlying claim." Christopher v. Harbury, 536 U.S. 403, 415, 122 S.Ct. 2179, 153 L.Ed.2d 413 (2002). Thus:

> Where prisoners assert that defendants' actions have inhibited their
> opportunity to present a past legal claim, they must show (1) that they
> suffered an "actual injury"-that they lost a chance to pursue a
> "nonfrivolous" or "arguable" underlying claim; and (2) that they have
> no other "remedy that may be awarded as recompense" for the lost claim
> other than in the present denial of access suit.  See Christopher v.
> Harbury, 536 U.S. 403, 415, 122 S.Ct. 2179, 153 L.Ed.2d 413 (2002).
> To that end, prisoners must satisfy certain pleading requirements:  The
> complaint must describe the underlying arguable claim well enough to
> show that it is "more than mere hope," and it must describe the "lost
> remedy."  See id. at 416–17, 536 U.S. 403, 122 S.Ct. 2179, 153 L.Ed.2d

413.

Monroe v. Beard, 536 F.3d 198, 205–06 (3d Cir.2008).  See Diaz v. Fed. Bureau of Prisons, No. 1:12CV 1810, 2013 WL 1246793, at *4 (M.D. Pa. Mar. 7, 2013) report and recommendation adopted, appeal dismissed (June 7, 2013) No. 1:12CV1810, 2013 WL 1246771 (M.D. Pa. Mar. 26, 2013).

Judged by these standards, any access-to courts claim brought by Hackley founders on several insurmountable obstacles.  First, there is no evidence that the defendants Hackley has elected to sue denied him access to legal remedies by denying him a parole appeal.  Quite the contrary, far from denying him legal access, the undisputed evidence shows that these defendants facilitated access to a parole appeal for Hackley, who then chose not to take an appeal of this adverse parole decision.

Beyond failing to show any denial of access to the courts committed by these defendants, Hackley has utterly failed to describe his underlying arguable parole appeal claim well enough to show that it was more than mere hope, and has failed to describe in realistic terms any lost remedy.  On this score, Hackley's claim fails because:  (1) he never pursued an appeal once Hugar and Mushala took steps to restore his parole appeal rights; and (2) an appeal would likely have been fruitless, since the denial of Hackley's parole was based on his own murderous past conduct in prison, homicidal conduct which seems undisputed.

Likewise Hackley's complaint fails to state a viable due process claim against either Hugar or Mushala, the correctional staff who helped restore Hackley's parole appeal rights.  Once again, a due process claim in this setting collapses because the undisputed evidence shows that these defendants did not deny Hackley due process.  Rather, they facilitated efforts to restore Hackley's appellate rights, only to have Hackley forfeit those rights through his own inaction.

Further, Hackley errs if he is trying to suggest that he had some substantive due process right to parole.  Quite the contrary, federal courts have routinely rejected suggestions that discretionary parole denials offend due process.  See, e.g., Williams v. Pa. Bd. of Probation and Parole, No. 07-3158, 2008 WL 5120773 (E.D. Pa. Oct. 31, 2008); Walls v. Attorney General, No. 06-1598, 2007 WL 4190790 (W.D. Pa. Nov. 26, 2007); Zuniga v. Pa. Bd. of Probation and Parole, No. 05-5517, 2007 WL 1002179 (E.D. Pa. March 29, 2007); Anderson v. Pa. Bd. of Probation and Parole, No. 05-00163, 2006 WL 1149233 (M.D. Pa. April 26, 2006); Bonsall v. Gillis, 372 F.Supp. 2d 805 (M.D. Pa. 2005); Bachman v. Jeffries, 488 F.Supp. 107 (M.D. Pa. 1980).  These cases are grounded upon several basic tenets of constitutional law.  At the outset, these cases acknowledge that it is well-settled that "[t]here is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence."  Greenholtz v. Inmates of Nebraska Penal

& Correctional Complex, 442 U.S. 1, 7 (1979); see also Rauso v. Vaughn, 79 F. Supp. 2d 550, 551 (E.D. Pa.2000)(the federal constitution does not create an entitlement to parole).

Since a discretionary decision of the Parole Board denying an inmate early parole does not implicate any constitutionally protected liberty interest, the scope of federal judicial review of these decisions is necessarily quite limited.  In the absence of a specific, articulated constitutional right to parole, the role of this Court in reviewing a parole denial on due process grounds has been defined by the United States Court of Appeals for the Third Circuit in the following terms:  "[E]ven if a . . . statute does not give rise to a liberty interest in parole release under Greenholtz, once a state institutes a parole system all prisoners have a liberty interest flowing directly from the due process clause in not being denied parole for arbitrary or constitutionally impermissible reasons."  Block v. Potter, 631 F.2d 233, 236 (3d Cir.1980); Bonsall v. Gillis, 372 F.Supp.2d 805, 807 (M.D. Pa. 2005)(quoting Block). However, when ensuring that parole denials are not motivated by arbitrary or constitutionally impermissible reasons, it is clear that "federal courts, . . . are not to 'second-guess parole boards', and the requirements of substantive due process are met if there is some basis for the challenged decision."  Hunterson v. DiSabato, 308 F.3d 236, 246 (3d Cir. 2002).  See also Coady v. Vaughn, 251 F.3d 480, 487 (3d Cir.

2001)(held, federal courts are not authorized by the due process clause to second-guess parole boards and the requirements of substantive due process are met if there is some basis for the challenged decision).   Moreover, the "relevant level of arbitrariness required to find a substantive due process violation involves not merely action that is unreasonable, but, rather, something more egregious, which we have termed at times 'conscience shocking' or 'deliberately indifferent.'"   Hunterson, 308 F.3d at 247.

Here, there is nothing about the Parole Commission decision to deny parole to Hackley which shocks the conscience or is arbitrary and capricious.   Quite the contrary, a judgment to defer early favorable parole consideration to a man who has instigated the murder of a correctional officer in prison seems to be an entirely reasonable and rationale course of action.   Therefore, nothing in the ultimate parole decision in this case raises due process concerns which would give rise to a cause of action against these correctional officials.

Finally, Hackley's retaliation claim is also judged against precise legal standards, standards which Hackley has failed to meet.   A prisoner claiming that prison officials have retaliated against him for exercising his constitutional rights must first prove the following three elements:  (1) the conduct in which he engaged was constitutionally protected; (2) he suffered adverse action at the hands of prison

officials; and (3) his constitutionally protected conduct was a substantial motivating factor in the defendants' conduct.  Carter v. McGrady, 292 F.3d 152, 158 (3d Cir. 2002).  With respect to the obligation to demonstrate that he suffered an adverse action, a plaintiff must demonstrate that he suffered action that "was sufficient to deter a person of ordinary firmness from exercising his rights."  Allah v. Seiverling, 229 F.3d 220, 225 (3d Cir. 2000).

The third essential element to a retaliation claim is that there be a causal link between the exercise of a constitutional right and the adverse action taken against the prisoner.  Rauser, 241 F.3d at 333-34.  To establish this third, and crucial, component to a constitutional retaliation claim, causation, an inmate must make an exacting showing.  In this setting:

> To establish the requisite causal connection a plaintiff usually must prove either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link.  See Krouse v. American Sterilizer Co., 126 F.3d 494, 503-04 (3d Cir.1997); Woodson v. Scott Paper Co., 109 F.3d 913, 920-21 (3d Cir.1997).  In the absence of that proof the plaintiff must show that from the "evidence gleaned from the record as a whole" the trier of the fact should infer causation.  Farrell v. Planters Lifesavers Co., 206 F.3d 271, 281 (3d Cir. 2000).

Lauren W. ex rel. Jean W. v. DeFlaminis, 480 F.3d 259, 267 (3d Cir. 2007).

In this case, Hackley's retaliation claim fails on three different scores.  There is an intellectually elusive quality to this claim.  At the outset, it is entirely unclear what exercise of a constitutionally protected right Hackley is claiming formed the foundation of this claim.  Indeed, a fair reading of Hackley's pleadings suggests that he has premised his retaliation claim on the notion that correctional staff denied him earlier access to this parole decision in retaliation for the fact that he had previously participated in the murder of a correctional officer.  The first element of any First Amendment retaliation claim is an allegation that the plaintiff engaged in constitutionally protected conduct.  To the extent that Hackley bases his First Amendment retaliation claim upon an assertion that correctional staff took adverse action against him due to his prior involvement in the murder of a correctional officer, he cannot exult his homicidal conduct into some sort of constitutionally protected liberty and this claim fails as a matter of law.  See Martinez v. Jones, No. 3:12-CV-1547, 2016 WL 4701542, at *3 (M.D. Pa. Sept. 8, 2016)( prisoner complaint that staff retaliated against him following an assault on staff failed to state First Amendment retaliation claim).

Further, beyond the fact that Hackley's claim of engaging in constitutionally protected conduct are hopelessly murky, his allegations of causation are entirely deficient.  Since it is difficult to discern what constitutionally protected conduct

Hackley was engaged in, it is virtually impossible to draw an intelligible causal connection between any constitutionally protected  conduct and any adverse action by the named defendants.  In short, given the complete absence of either (1) an unusually suggestive temporal proximity between protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link, this complaint also fails to satisfy the causation element of a retaliation claim.

Finally, when we focus on the actions of the named defendants, who actually attempted to restore Hackley's parole appeal rights, we cannot see how their conduct can be viewed in any way as retaliatory or adverse.  Rather than taking adverse action against Hackley, Hugar and Mushala took helpful steps designed to aid this inmate, only to have Hackley ignore and rebuff their assistance.

In sum, Hackley's retalaition claim appears to fail in every conceivable way to state a claim upon which relief may be granted.  Therefore, that claim should also be dismissed.

### C.     The Defendants Are Entitled to Qualified Immunity

But even if Hackley had articulated some colorable constitutional claim, the defendants would still be entitled to qualified immunity from these claims for damages.  In order to establish a civil rights claim Hackley must show the deprivation

of a right secured by the United States Constitution or the laws of the United States.

Satisfying these elements alone, however, does not guarantee that Hackley is entitled

to recover damages from these public officials.   Government officials performing

"discretionary functions," are insulated from suit if their conduct did not violate a

"clearly established statutory or constitutional right[] of which a reasonable person

would have known."  Wilson v. Layne, 526 U.S. 603, 609 (1999); see also Pearson

v. Callahan, 555 U.S. 223 (2009).   This doctrine, known as qualified immunity,

provides officials performing discretionary functions not only defense to liability, but

also "immunity from suit."  Crouse v. S. Lebanon Twp., 668 F. Supp. 2d 664, 671

(M.D. Pa. 2009) (Conner, J.) (citations omitted).   Qualified immunity

> balances two important interests – the need to hold public officials
> accountable when they exercise power irresponsibly and the need to
> shield officials from harassment, distraction, and liability when they
> perform their duties reasonably.  The protection of qualified immunity
> applies regardless of whether the government official's error is "a
> mistake of law, a mistake of fact, or a mistake based on mixed questions
> of law and fact."

Pearson, 555 U.S. at 231.

Determinations regarding qualified immunity, and its application in a given

case, require a court to undertake two distinct inquiries.  First, the court must evaluate

whether the defendant violated a constitutional right.  Saucier v. Katz, 533 U.S. 194,

201-02 (2001), abrogated in part by Pearson, 555 U.S. 223; Curley v. Klem, 499 F.3d

199, 206 (3d Cir. 2007); <u>Williams v. Bitner</u>, 455 F.3d 186, 190 (3d Cir. 2006).  If the defendant did not actually commit a constitutional violation, then the court must find in the defendant's favor.  <u>Saucier</u>, 533 U.S. at 201.  If the defendant is found to have committed a constitutional violation, the court must undertake a second, related inquiry to assess whether the constitutional right in question was "clearly established" at the time the defendant acted.  <u>Pearson</u>, 555 U.S. at 232; <u>Saucier</u>, 533 U.S. at 201-02.  The Supreme Court has instructed that a right is clearly established for purposes of qualified immunity if a reasonable state actor under the circumstances would understand that his conduct violates that right.  <u>Williams</u>, 455 F.3d at 191 (citing <u>Saucier</u>, 533 U.S. at 202).

In order to find that a right is clearly established, "the right allegedly violated must be defined at the appropriate level of specificity." <u>Wilson</u>, 526 U.S. at 615.  The Supreme Court has explained that, at least in some cases, "a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though the very action in question has [not] previously been held unlawful." <u>Hope v. Pelzer</u>, 536 U.S. 730, 741 (2002) (quoting <u>United States v. Lanier</u>, 520 U.S. 259, 271 (1997) (internal quotation marks and citation omitted)).  In some cases, "officials can still be on notice that their conduct

violates established law even in novel factual circumstances." <u>Wilson</u>, 455 F.3d at 191 (quoting <u>Hope</u>, 536 U.S. at 741).

The court is no longer required to conduct these two inquiries sequentially, <u>Pearson</u>, 555 U.S. at 239-40, and it may forego difficult constitutional issues and award qualified immunity to a defendant if it is apparent that the defendant did not violate rights that were clearly established at the time the defendant acted. <u>Id.</u> Where a court elects to address the alleged constitutional violations, however, the court's analysis of the merits for purposes of summary judgment merges with analysis of the deprivation of federal rights for purposes of qualified immunity. <u>Gruenke v. Seip</u>, 225 F.3d 290, 299-300 (3d Cir. 2000); <u>Crouse</u>, 668 F. Supp. 2d at 671; <u>see also</u> <u>Grant v. City of Pittsburgh</u>, 98 F.3d 116, 122 (3d Cir. 1996) ("[C]rucial to the resolution of [the] assertion of qualified immunity is a careful examination of the record . . . to establish . . . a detailed factual description of the actions of each individual defendant (viewed in a light most favorable to the plaintiff).")  Because qualified immunity entails a consideration of whether the law was clearly established at the time of a defendant's conduct, this defense, which focuses on the state of the law, presents a question of law for the court, and one which can often be resolved on summary judgment.  See <u>Montanez v. Thompson</u>, 603 F.3d 243 (3d Cir. 2010).

In this case, Hackley has chosen to sue the officials who actually assisted him, and cured any potential prejudice he might have experienced due to the delayed notification of this parole action.  Thus, Hackley sues the very staff who listened to his complaints about not receiving notice of the parole action; followed up on those concerns;  obtained the parole commission decision and provided it to Hackley; and then took the affirmative step of giving Hackley a sworn declaration verifying that Hackley first received this notice of Parole action on February 20, 2014, providing Hackley with good cause for filing a tardy appeal.  (Doc. 17-1, Declaration of Helen Krapels.) (Doc. 10, p.5.)  Further, Hackley sues these officials for interfering with his right to appeal to parole decision even though it is completely undisputed that, once the defendants paved the path for Hackley to file his appeal, he chose not to pursue that appeal.

Thus, Hackley's claim rests on the novel notion that by restoring his legal rights the defendants somehow also clearly denied him his rights.  Simply stating this proposition reveals the fundamental legal bankruptcy of this claim.  On these facts, nothing in the conduct of these officials, who extended themselves to assist Hackley in restoring his parole appeal rights, could have alerted these officials that their actions violated "clearly established statutory or constitutional right[] of which a reasonable person would have known."  Wilson v. Layne, 526 U.S. 603, 609 (1999).

Therefore, these officials should be entitled to qualified immunity from damages in this case.

### III.   <u>Recommendation</u>

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that the defendants' motion to dismiss, or in the alternative for summary judgment (Doc. 16.) be GRANTED.

The parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof.  Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  The briefing requirements set forth in Local Rule 72.2 shall apply.  A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.  The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 21st day of September 2016.

*S/Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge